*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| In the Matter of the Necessity for the Hospitalization of | ) ) ) Supreme Court No. S-17912 |
| CARL S. | ) Superior Court No. 3AN-20-01855 PR ) ) O P I N I O N ) ) No. 7596 – May 27, 2022 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Adolf V. Zeman, Judge.

Appearances: Emily L. Jura, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for Carl S. Laura Wolff, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for State of Alaska.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

BORGHESAN, Justice.

## I.     INTRODUCTION

A man appeals a superior court order authorizing his civil commitment. First, he argues that the order should be vacated because the petition for commitment was not "signed by two mental health professionals," as required by statute.[1]  Second, he

---

[1]     AS 47.30.730(a).

argues that the superior court erred by granting the commitment petition based on a theory of grave disability that was not specifically pled.[2]

Because the man did not object to the signature deficiency and cannot show it prejudiced him, the error does not warrant vacating the commitment order. But committing the man on a theory of grave disability that was not specifically pled without giving him notice and an opportunity to present additional evidence or cross-examination relevant to that theory violated the man's right to due process.[3] We therefore vacate the commitment order.

## II.    FACTS AND PROCEEDINGS

Carl S.[4] was brought to the Anchorage jail for booking on August 28, 2020. He was taken into emergency custody there the following evening after being "unable to cooperate" with the Department of Corrections's medical screening, displaying "disorganized cognitive processes," having "nonsensical speech," being "disoriented [as] to place, situation, and date," and eating the topical ointment given to him for lesions on his body that appeared to be caused by picking at his skin.

On August 30 a psychiatrist filed a petition for emergency evaluation, indicating probable cause to believe that Carl was gravely disabled.[5] That same day,

---

[2]      *See* AS 47.30.730(a)(1) (providing petition for 30-day civil commitment must allege respondent "is mentally ill and as a result is likely to cause harm to self or others or is gravely disabled"); AS 47.30.915(9) (defining "gravely disabled" in two different ways).

[3]      Alaska Const. art. I § 7 ("No person shall be deprived of life, liberty, or property, without due process of law.").

[4]      We use a pseudonym to protect the respondent's privacy.

[5]      A mental health professional or peace officer "who has probable cause to believe that a person is gravely disabled or is suffering from mental illness and is likely
(continued...)

another mental health professional petitioned for an order authorizing Carl's hospitalization for evaluation.[6] Based on the mental health professional's observations as well as Carl's past schizophrenia diagnosis, the petition alleged that Carl was gravely disabled. The superior court granted the petition on August 31, ordering Carl's immediate hospitalization for evaluation.

## A. Petition For 30-Day Commitment

On September 8 — after Carl arrived and was evaluated at Alaska Psychiatric Institute (API) — a petition for 30-day commitment was filed.[7] The petition alleged that Carl had a diagnosis of schizophrenia, "experience[d] audiovisual hallucinations and delusions about being possessed," and "[a]t times" had "disorganized" speech "with frequent derailment and incoherence." The petition also alleged that Carl was: (1) likely to cause serious harm to himself because "[h]e has impaired judgment and may put himself in danger"; (2) likely to cause serious harm to others because he "is paranoid of others being after him" and "made a whip from a towel for his defense"; and (3) gravely disabled, and that if not treated, Carl "will suffer mental distress, his level of

---

[5]    (...continued)
to cause serious[, imminent] harm to self or others" may "cause the person to be taken into custody and delivered to the nearest crisis stabilization center . . . or the nearest evaluation facility." AS 47.30.705(a). The mental health professional or peace officer must then petition for the person's emergency evaluation. *Id.*

[6]    AS 47.30.710(b) authorizes mental health professionals who perform an emergency evaluation at an evaluation facility or crisis stabilization center to "hospitalize the respondent, or arrange for hospitalization, on an emergency basis," if the mental health professionals "ha[ve] reason to believe that the respondent is (1) mentally ill and that condition causes the respondent to be gravely disabled or to present a likelihood of serious harm to self or others, and (2) is in need of care or treatment."

[7]    AS 47.30.730.

function will continue to deteriorate, and he may not be capable of surviving safely in freedom due to self[-]injurious tendencies."

A court may grant a petition to civilly commit an individual only if it finds by clear and convincing evidence that the individual "is mentally ill and as a result is likely to cause harm to [self] or others or is gravely disabled."[8]  Alaska Statute 47.30.915(9) defines "gravely disabled" as "a condition in which a person as a result of mental illness" either:

> (A) is in danger of physical harm arising from such complete neglect of basic needs for food, clothing, shelter, or personal safety as to render serious accident, illness, or death highly probable if care by another is not taken; or

> (B) will, if not treated, suffer or continue to suffer severe and abnormal mental, emotional, or physical distress, and this distress is associated with significant impairment of judgment, reason, or behavior causing a substantial deterioration of the person's previous ability to function independently.

The Alaska Court System has created a form that may be used to petition for an individual's commitment.  The form contains a checkbox next to each ground for commitment that may be alleged: harm to self, harm to others, or gravely disabled.  Beside the checkbox for gravely disabled, the form contains an additional checkbox next to each definition of gravely disabled:  (9)(A) (referred to in this decision as "extreme neglect") and (9)(B) (referred to here as "distress and deterioration").  In Carl's case, the boxes for gravely disabled and distress and deterioration were checked; the box for extreme neglect was not.  The petition in Carl's case appears to have been filed by two

---

[8]     *In re Joan K.*, 273 P.3d 594, 598 (Alaska 2012) (alteration in original) (quoting AS 47.30.735(c)).

mental health professionals whose names are typed at the bottom of the form, but the petition was signed by only one of them.

## B. Commitment Hearing

Carl's treating psychiatrist — who signed the petition — testified as an expert witness at the September 14 commitment hearing. She testified that she had observed Carl at least five or six times, once for a forty-minute initial evaluation and the other times for five- to ten-minute visits. She diagnosed Carl with chronic paranoid schizophrenia. She also testified that Carl experienced hallucinations and paranoia and that she was not able to have a rational conversation with him.

Carl's treating psychiatrist provided context about each of the three grounds for commitment that had been alleged in the petition. First, she expressed concern that Carl would be at risk of harming people outside of API. She said that although Carl had not attempted to hurt anyone while at API, he had a "whip" made from a rolled-up towel in his room and talked about using it if somebody tried to bully him. She believed Carl could pose a risk of harm to people outside of API because his paranoia and "deception in reality orientation" might lead to perceiving and pursuing non-existent threats. Second, the treating psychiatrist testified that she was concerned Carl would harm himself by ending up in danger. And third, the treating psychiatrist testified that she believed he was gravely disabled because he might not be able to get proper care for his basic needs and likely lacked the ability to keep himself safe.

The State argued in closing that the evidence presented to show Carl was a danger to himself was more pertinent to grave disability and should be considered under that ground for commitment. The State did not specify which type of grave disability it was referring to. Carl argued that the State had withdrawn the danger-to-self ground for commitment. Carl then addressed argument to the "two other grounds the

[S]tate is moving forward on" — danger to others and grave disability based on distress and deterioration.

Carl insisted that his mere possession of a rolled-up towel "whip" was insufficient to establish danger to others. Carl admitted that the issue of grave disability was a "closer question" but argued that he could take care of his own needs upon release based on evidence that he was eating snacks regularly and lack of evidence about his showering habits. Carl also argued that the State had not offered any evidence concerning his baseline before his admission to API. Thus, Carl argued, the State had not shown a "substantial deterioration of [his] previous ability to function"[9] and consequently had not proven grave disability based on distress and deterioration.

### C. Magistrate Judge's Recommendations And Review By The Superior Court

The magistrate judge declined to recommend that the superior court commit Carl on the grounds of danger to self or others.[10] In addition, the magistrate judge found that the State had not met its burden to show grave disability based on distress and deterioration because it had failed to establish "a previous baseline" for Carl. But the magistrate judge found that the State had established grave disability based on extreme neglect.[11] In support of this finding, the magistrate judge cited the treating psychiatrist's "very credible" testimony that Carl "require[d] prompting for food and basic hygiene" and lacked the ability to look for shelter due to his "disconnect[] from reality." The magistrate judge pointed to Carl's regular interruptions during the hearing, which he

---

[9] AS 47.30.915(9)(B).

[10] *See* Alaska R. Prob. 2 (providing for appointment of standing master to conduct civil commitment proceedings and establishing process for superior court review of master's recommendations).

[11] AS 47.30.915(9)(A).

termed "stream of [consciousness] speech," as evidence supporting his grave disability finding.

Carl objected orally and in writing to the magistrate judge's recommendation to commit him based on extreme neglect. At the hearing Carl argued that because Alaska is a notice pleading state, the State "need[ed] to be clear about what [it] moved for," and that because the State pled grave disability based only on distress and deterioration, the magistrate judge could not sua sponte find Carl gravely disabled based on extreme neglect. The magistrate judge rejected this argument, reasoning that Carl had received sufficient notice of the allegations against him. In written objections to the magistrate judge's findings, Carl elaborated that the petitioners did not mark the box alleging extreme neglect and that committing him on this theory of grave disability violated his right to due process. The State responded that the facts alleged in the petition gave Carl sufficient notice that the State intended to prove grave disability under either definition, and that the magistrate judge's oral ruling gave the parties notice and an opportunity to adjust their cases accordingly. The State argued that, "[i]f nothing else, [the superior] court has the discretion to order a *de novo* hearing."

The superior court adopted the magistrate judge's recommendations in full, ruling that Carl had received adequate notice:

> Alaska is a notice pleading state. Civil Rule 8(a) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Section 8(e)(1) notes that "no technical forms of pleadings or motions are required." Here, API sought relief under the definition of "Gravely Disabled" and explained the reasoning for that determination, putting [Carl] on notice of the claim. Notice was proper and based on my de novo review the master's recommendations are adopted in full.

Carl appeals.

## III.  STANDARD OF REVIEW

We exercise our independent judgment in interpreting the Alaska Constitution, the mental health commitment statutes, and court rules.[12]  "Under the independent judgment standard we adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[13]

## IV.  DISCUSSION

### A.  Because Carl Did Not Object To The Signature Deficiency, We Decline To Vacate The Commitment Order On That Basis.

Carl argues that the magistrate judge erred by proceeding with the commitment hearing because a petition for commitment "must be signed by two mental health professionals who have examined the respondent,"[14] yet his was signed by only one.

Carl did not object to this error during the proceedings below, so he failed to preserve the issue for appeal.[15]  We review issues raised for the first time on appeal for plain error, which is an " 'obvious mistake' that is 'obviously prejudicial.' "[16]  Carl concedes he cannot show prejudice from the signature deficiency and points out that a

---

[12]  *In re Gabriel C.*, 324 P.3d 835, 837 (Alaska 2014) (applying independent judgment to interpret Alaska Constitution and mental health commitment statute); *Shea v. State, Dep't of Admin., Div. of Ret. & Benefits*, 204 P.3d 1023, 1026 (Alaska 2009) (applying independent judgment to interpret court rules).

[13]  *Shea*, 204 P.3d at 1026.

[14]  AS 47.30.730(a).

[15]  *McCavit v. Lacher*, 447 P.3d 726, 731-32 (Alaska 2019).

[16]  *Gabriel C.*, 324 P.3d at 838 (citations omitted) (holding that violation of statutory deadline to hold commitment hearing was neither an obvious mistake nor obviously prejudicial).

respondent will virtually never be able to show prejudice in this situation. Although two medical professionals are required to sign the petition, the petition may be granted based on the testimony of only one medical professional, "likely curing this procedural deficiency whenever it occurs."

Instead, Carl urges us to exercise our supervisory powers to suspend the prejudice requirement of plain error review and vacate the 30-day commitment order. Doing so, Carl argues, will ensure that respondents are afforded the right to have those proceedings advance to the 30-day commitment stage only if two medical providers believe there are grounds for commitment. Carl relies on *McCracken v. Davis*, which involved an appeal of the superior court's denial of reconsideration without allowing oral argument.[17] Acknowledging the difficulty of showing this error was prejudicial, we suggested that where there is "disregard" for the civil rules, we may "devise necessary remedial steps in each case under [our] supervisory power to protect the rights of litigants," such as by suspending the obligation to show prejudice.[18] Yet we declined to do so in that case because no disregard for the civil rules had been shown.[19] And we ultimately declined to reverse for failure to hold oral argument after concluding the error caused no prejudice.[20]

We reach the same conclusion here. Carl has not shown "disregard" for the two-signature requirement that would justify suspending the need to show that an error

---

[17]     560 P.2d 771, 774 (Alaska 1977).

[18]     *Id.* (citing Alaska Const. art. IV, § 15 — which authorizes the supreme court to make and promulgate rules governing court administration and civil and criminal procedure — as the source of this court's supervisory authority).

[19]     *See id.*

[20]     *Id.* at 774-75.

is prejudicial. In *McCracken* the litigant filed a subsequent motion to vacate the court's order due to the failure to hold argument.[21] Although the superior court issued a written order denying this subsequent motion — showing it was aware of the asserted deficiency — we found no disregard of the rules warranting a special remedy on appeal.[22] In this case, Carl never objected to the lack of two signatures on the petition for his commitment. Without evidence that the magistrate judge or superior court were conscious of the signature requirement and ignored it, we cannot say that they showed "disregard"[23] for statutory procedures that would warrant the special remedy of suspending the requirement to show that an error is prejudicial.[24]

Carl had the opportunity to timely object to the missing signature on the petition at any point before the hearing; had he done so, the error could have been cured or the petition dismissed. Thus we need not reverse a non-prejudicial error in this case to ensure that this procedural protection can be enforced.[25] The two-signature requirement is an important procedural protection for respondents. It ensures that patients are not further deprived of their liberty based on the unchallenged opinion of a

---

[21]     *Id.* at 774.

[22]     *See id.*

[23]     *See Disregard*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The action of ignoring or treating without proper respect or consideration.").

[24]     *See* Alaska R. Civ. P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

[25]     *Cf. City of Bethel v. Peters*, 97 P.3d 822, 830 (Alaska 2004) (holding that plain error review applied when party did not object to court's failure to take corrective action in response to allegedly improper closing arguments); *Shields v. Cape Fox Corp.*, 42 P.3d 1083, 1087 (Alaska 2002) (holding that plain error review applied when party did not object to court's failure to give comparative fault instruction).

single mental health professional. But when no objection is made, the absence of a signature from a mental health professional does not justify vacating a commitment order supported by sufficient evidence.[26]

## B. It Was Error To Commit Carl On A Ground Different From The Grounds Expressly Pled In The Commitment Petition.

Carl next argues that it was error to commit him on a theory of grave disability — extreme neglect — that was not alleged in the petition. The superior court ruled that Carl received sufficient notice because the petitioners sought commitment on grounds of grave disability generally and stated the factual basis for believing him to be gravely disabled in the petition. Carl disagrees, arguing that the civil rules and civil commitment statutes require greater specificity in pleading and that the lack of notice that he might be committed due to extreme neglect violated his constitutional right to due process.[27]

### 1. The proceedings did not violate court rule or statute.

The superior court concluded that the civil rules do not require more notice than Carl ultimately received. The court explained that Alaska is a "notice pleading state . . . requir[ing] [only] a 'short and plain statement of the claim showing that the pleader is entitled to relief,' "[28] not "technical forms of pleadings." Carl contends that Civil Rule 8 requires additional notice in civil commitment cases because there is little time for

---

[26] Because we affirm based on lack of prejudice, we do not address the State's argument that the two-signature requirement is not mandatory but directory and that substantial compliance is sufficient.

[27] Alaska Const. art. I § 7 ("No person shall be deprived of life, liberty, or property, without due process of law.").

[28] Alaska R. Civ. P. 8(a).

patients and their counsel to prepare for hearing on the commitment petition,[29] because there is minimal discovery prior to hearing, and because an individual's liberty is at stake. Policy arguments notwithstanding, neither the text of Civil Rule 8 nor our decisions interpreting it require any greater specificity in pleading this type of action.[30]

Carl also argues that AS 47.30.730(a) requires petitioners to identify the "statutory subsection" under which they seek to commit the respondent, as well as the evidence to support that theory. But the text of AS 47.30.730(a) is clear about what is required: the petition must "allege that the respondent is mentally ill and as a result is likely to cause harm to self or others or is gravely disabled" and list "the facts and specific behavior of the respondent supporting [that] allegation."[31] Although AS 47.30.915 defines "grave disability" in two different ways, and although the court form generally used to petition for commitment incorporates those definitions, AS 47.30.730(a) itself does not require the petitioners to describe the type of grave disability on which they seek the respondent's commitment.

The superior court therefore did not err as a matter of court rule or statute by ordering Carl committed based on extreme neglect when the commitment petition did not expressly plead that particular type of grave disability.

---

[29] *See* AS 47.30.715 (requiring courts to schedule a 30-day commitment hearing "within 72 hours after the respondent's arrival" at a facility for evaluation).

[30] *See, e.g., Bigley v. Alaska Psychiatric Inst.*, 208 P.3d 168, 181 (Alaska 2009) (noting that Civil Rule 8 does not "require details of evidence that a claimant will offer to establish a claim," and "is satisfied by a brief statement that gives the defendant fair notice of the claim and the grounds upon which it rests" (cleaned up) (citation omitted)); *cf.* Alaska R. Civ. P. 9 (requiring greater specificity when pleading certain types of claims, such as fraud, mistake, or a denial of performance or occurrence of a condition precedent).

[31] AS 47.30.730(a)(1), (7).

### 2.    The proceedings violated Carl's right to due process.

Carl argues that the superior court violated his due process rights by granting the petition for commitment on a ground that was not pled.  Carl orally objected at the commitment hearing and raised this argument again in his written objections to the superior court.  The State suggests that Carl nevertheless failed to preserve the issue for appeal because he did not expressly request a trial de novo.  But Carl was not required to request this specific remedy in order to preserve the issue; his objections gave the superior court sufficient notice and the opportunity to fix the due process issue by allowing a more limited remedy of presenting additional testimony.  Carl has therefore preserved the issue for appeal.

Turning to the merits, we agree that Carl was deprived of sufficient notice and opportunity to be heard.  Involuntary commitment implicates "fundamental constitutional guarantees of liberty and privacy" and therefore entitles the respondent to due process protections.[32]  "[D]ue process 'requires that the notice of a hearing must be appropriate to the occasion and reasonably calculated to inform the person to whom it is directed of the nature of the proceedings,' " and "that a respondent be notified in such a manner that . . . [allows for] a reasonable opportunity to prepare."[33]  To determine whether these commitment proceedings afforded due process, we apply the *Mathews v. Eldridge* three-part balancing test, weighing:  (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest

---

[32]    *In re Naomi B.*, 435 P.3d 918, 929 (Alaska 2019) (quoting *Bigley*, 208 P.3d at 179); *see also In re Gabriel C.*, 324 P.3d 835, 839 (Alaska 2014).

[33]    *Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 380 (Alaska 2007) (first quoting *Huntley v. N.C. State Bd. of Educ.*, 493 F.2d 1016, 1019 (4th Cir. 1974), then citing *French v. Blackburn*, 428 F. Supp. 1351, 1357 (M.D.N.C. 1977), *aff'd*, 443 U.S. 901 (1979)).

through the procedures used"; and (3) "the [State's] interest, including the . . . fiscal and administrative burdens" of additional procedural requirements.[34]

An involuntary civil commitment is a "massive curtailment of liberty."[35] Even a small risk of erroneous commitment is great cause for concern, and weighs in favor of stronger protections to reduce this risk.

Gauging the risk of erroneous deprivation requires us to "assess the probable value of the requested procedure in reducing" this risk and "the likelihood that the requested procedure might alter the outcome."[36] Carl suggests that the magistrate judge should have given notice that he was considering commitment based on extreme neglect and the opportunity to present more evidence or argument on that type of grave disability. The State contends that because the two definitions of grave disability are so similar — each "involv[ing] a respondent's inability to function independently" — the evidence used to establish grave disability under each subparagraph overlaps and in this case was essentially the same. The State maintains that Carl had the opportunity, and in fact attempted, to rebut the testimony that ultimately supported the magistrate judge's finding of grave disability based on extreme neglect. Because that testimony was also relevant to grave disability based on distress and deterioration, the State argues there was no risk of prejudice to Carl.

Although the risk of erroneous deprivation of Carl's liberty may have been small, it was not negligible. To prove distress and deterioration the State must establish a baseline level of the individual's "ability to function independently" in order to

---

[34]     *Sarah A. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 427 P.3d 771, 778 (Alaska 2018) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

[35]     *Naomi B.*, 435 P.3d at 928 (quoting *Wetherhorn*, 156 P.3d at 375).

[36]     *Sarah A.*, 427 P.3d at 779 (cleaned up) (citations omitted).

demonstrate that there has been a "substantial deterioration" of that ability.[37]  Carl pointed out in closing that the State had not presented any evidence about his baseline before his admission to API.  Because the lack of baseline evidence was fatal to the theory that Carl was gravely disabled due to distress and deterioration, Carl may have seen little need to cross-examine his treating psychiatrist more extensively on other evidence.  Yet had Carl known that the magistrate judge was going to consider a theory that was not pled — that he was likely to suffer extreme neglect — he may have performed a more thorough cross-examination on the testimony relevant to that issue, such as the need to remind him to eat and shower.  With more vigorous cross-examination, it is possible that the magistrate judge would not have found clear and convincing evidence that Carl was gravely disabled due to extreme neglect — just as the magistrate judge was not convinced by the State's evidence that Carl was a danger to himself or others.  Therefore the failure to notify Carl that this theory of grave disability was under consideration — and to offer him an opportunity to present additional testimony or cross-examination relevant to that theory — created at least some genuine risk of unjustified commitment.

Finally, notifying Carl that the magistrate judge was considering committing him under a theory of extreme neglect and giving him an additional opportunity to present evidence or cross-examination would not have added significant fiscal or administrative burdens.  The State certainly has an interest, as it claims, "in having psychiatrists do their jobs treating patients instead of requiring them to focus [on]

---

[37]     *See In re Mark V.*, 375 P.3d 51, 57 (Alaska 2016) ("The definition [of distress and deterioration] establishes 'the person's previous ability to function independently' as the baseline from which 'a substantial deterioration' is measured." (quoting AS 47.30.915(9)(B))). *abrogated on other grounds by Naomi B.*, 435 P.3d at 918.

-15-                                          **7596**

legal nuances." But requiring a mental health professional who is already present at the commitment hearing to spend a few more minutes testifying and being cross-examined on an additional ground for commitment would have only a negligible impact on the provider's ability to treat patients. Therefore the cost of curing the lack of notice to Carl was minimal.

Balancing these factors, we conclude that Carl's due process rights were violated when Carl was committed on a finding of grave disability based on extreme neglect when he was not notified that this theory of grave disability was under consideration or given a chance to present additional evidence or argument relevant to that theory.[38]

## V.    CONCLUSION

We therefore VACATE the superior court's 30-day commitment order.

---

[38]    We do not affirm on the alternate ground that the issue of extreme neglect was tried by the express or implied consent of the parties under Civil Rule 15(b). Trial by consent is "difficult to establish." *Burton v. Fountainhead Dev. Inc.*, 393 P.3d 387, 395 (Alaska 2017) (quoting *Tufco, Inc. v. Pac. Env't Corp.*, 113 P.3d 668, 673 (Alaska 2005)). Although the State's briefing raises the theory of trial by implied consent, it does not expressly urge affirmance on this theory or explain how Carl may have impliedly consented.