NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| In the Matter of the Necessity for the Hospitalization | ) | Supreme Court No. S-18769 |
| | ) | |
| D. T. | ) | Superior Court No. 3AN-23-01166 PR |
| | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND JUDGMENT[*] |
| | ) | |
| | ) | No. 2054 – November 13, 2024 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Herman G. Walker, Jr., Judge.

Appearances: Sharon Barr and Renee McFarland, Assistant Public Defenders, and Terrence Haas, Public Defender, Anchorage, for D.T., Helen E. Mendolia, and Jessica Leeah, Assistant Attorneys General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for State of Alaska.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

## I.     INTRODUCTION

A man afflicted by mental illness traveled on foot through Alaska in harsh conditions without sufficient clothing or supplies. He planned to voyage by raft to Russia to have a microchip removed from his body and to meet with his friend, Vladimir

---

[*]     Entered under Alaska Appellate Rule 214.

Putin. A psychiatrist petitioned for the man's involuntary commitment on the ground that he was gravely disabled because he demonstrated a complete neglect of his basic needs. The superior court granted the petition on this ground, but also ordered the man's commitment based on three other grounds not alleged in the petition.

We hold that it was error to grant the petition based on grounds not alleged in the petition. But clear and convincing evidence supports the allegation in the petition that the man was gravely disabled based on his complete neglect of his basic needs. Accordingly, we affirm the commitment order, vacate the three grounds not alleged in the petition, and remand for the superior court to issue a corrected order.

## II. FACTS AND PROCEEDINGS

### A. Facts

D.T. began a journey from Kansas City toward Russia, via Alaska, near the end of April 2023.[1] By May D.T. had reached Prudhoe Bay, apparently arriving on foot from Fairbanks, and next began walking the Dalton Highway south toward Coldfoot. He was carrying $5,000 in cash, several days' worth of food, and a couple of extra sweatshirts. After D.T. called his mother and told her that he was afraid, his mother called the police. Police found D.T. and took him to Fairbanks Memorial Hospital.

While at the hospital, D.T. explained that he thought the government had implanted a microchip in his body. He told staff he was attempting to travel to Russia to get the chip removed and meet Putin, whom he described as a family friend.

---

[1]    Although we typically use pseudonyms to protect parties' privacy, we refer to the respondent in this case by his initials in response to his counsel's request "to minimize any risk of confusion to [D.T.]" *See In re Necessity for the Hospitalization of G.L.*, 449 P.3d 694, 694 n.1 (Alaska 2019).

D.T. was transferred to the Alaska Psychiatric Institute (API), where a psychiatrist petitioned for a 30-day commitment on the ground that D.T. was gravely disabled because of his complete neglect of his basic needs.[2]

### B.	Proceedings

The superior court held a hearing on the commitment petition. D.T.'s mother and an API psychiatrist were the only two witnesses.

D.T.'s mother testified about the delusions that led her son to attempt to travel to Russia. She explained that D.T. believed that microchips had been implanted in his body. She stated that he decided to go to Russia to have the microchips removed.

D.T.'s mother also testified about her son's general inability to care for himself. She explained that D.T. had previously rejected an offer of housing while he was in Kansas City, instead choosing to live in his car with a space heater while he attempted to construct his own shelter. She thought her son was capable of buying food and noted that he had been traveling with $5,000, but said that, at times, he was limited in his ability to communicate and obtain things he needs. She recounted that D.T. had been put on psychotropic medication twice — once after being incarcerated as a teenager and again after being hospitalized several years ago in Seattle — but he had never taken his medication for a sustained period.

Testimony from the psychiatrist described the "delusional beliefs" D.T. expressed while at API, including statements about his relationship with Putin. The psychiatrist explained that D.T. had been eating, showering, and otherwise attending to his daily needs while at API. He also acknowledged that D.T. was not malnourished when he was admitted. But he noted that D.T. was not dressed appropriately for the cold when he arrived and was generally unprepared to travel in extreme conditions,

---

**2**	AS 47.30.915(11)(A). The petition refers to AS 47.30.915(9), but the gravely disabled definition is now in AS 47.30.915(11).

such that he could face "death and all sorts of terrifying . . . outcomes" if he continued traveling. Further, the psychiatrist testified that D.T. "was very much wanting to get out [of API]" so he could continue toward Russia, and would "purchase a raft and continue on his way" if he could not find other transportation. Consequently, the psychiatrist opined that D.T.'s delusions made it likely that he would end up in a "very dangerous situation."

The court granted the petition and ordered a 30-day commitment to API. It found that D.T. was mentally ill and gravely disabled because of his complete neglect of his basic needs,[3] which was the only allegation stated in the petition. However, the court also granted the petition based on three allegations that were not stated in the petition: D.T. was likely to cause serious harm to himself,[4] he was likely to cause serious harm to others,[5] and he was gravely disabled because his incapacity rendered him incapable of surviving safely in freedom.[6] Consequently, the court ordered D.T.'s commitment based on the ground alleged in the petition and three grounds that were not alleged.

D.T. appeals.

## III. STANDARD OF REVIEW

Whether the superior court's factual findings meet the statutory requirements for involuntary commitment is a question of law that we review de novo.[7]

---

[3]     AS 47.30.915(11)(A).

[4]     AS 47.30.915(15)(A).

[5]     AS 47.30.915(15)(B).

[6]     AS 47.30.915(11)(B).

[7]     *In re Necessity for the Hospitalization of Meredith B.*, 462 P.3d 522, 525 (Alaska 2020).

## IV. DISCUSSION

The sole ground raised in the petition was that D.T. was gravely disabled because he had completely neglected his basic needs.[8]  Thus, the parties agree that it was error to order D.T.'s commitment based on the three additional grounds not alleged in the petition.  We agree that commitment based on those three grounds violated D.T.'s due process rights and therefore vacate these portions of the commitment order.[9]

D.T.'s primary argument is that the record is insufficient to support his commitment on the gravely disability ground that was alleged.  Further, D.T. argues that the superior court violated his right to due process by committing him on grounds not noticed in the petition, and his committal should therefore be reversed.  We disagree. The court's legal error in committing D.T. on those additional grounds for which he did not have notice does not require us to vacate the court's factual findings, and its findings reflect clear and convincing evidence that D.T. was gravely disabled because of his complete neglect of his basic needs.  Accordingly, we affirm D.T.'s commitment, but we remand for the superior court to issue a corrected order.[10]

### A.    We Need Not Vacate The Superior Court's Factual Findings.

D.T. argues that we must vacate the factual findings that the superior court used to support the three grounds for commitment that were not alleged in the petition. He reasons that the court's factual findings were "cabined" to their corresponding

---

[8]    AS 47.30.915(11)(A).

[9]    *See In re Necessity for the Hospitalization of Carl S.*, 510 P.3d 486, 495 (Alaska 2022) (holding committing respondent on grounds not in petition violates respondent's due process rights).

[10]    *See In re Necessity for the Hospitalization of Connor J.*, 440 P.3d 159, 162, 167-68 (Alaska 2019) (remanding for corrected order where parties agreed written order should not have included master's "danger to others" determination that superior court had rejected at hearing).

grounds for commitment.[11]  But although it was error for the court to commit D.T. based on grounds not alleged in the petition, that error does not invalidate or taint the court's factual findings such that they cannot be used to support the ground that was alleged.

D.T. had notice of the factual basis supporting the court's commitment order.  The petition alleged that D.T. had previously traveled long distances on foot in extreme conditions without sufficient supplies and intended to travel by raft to Russia.  The petition thus provided D.T. with notice and an opportunity to challenge the evidence supporting these allegations.[12]  And he took advantage of this opportunity by cross-examining his mother and the psychiatrist regarding his travel preparations and ability to obtain food and lodging.  D.T. also elicited testimony from the psychiatrist about his good physical condition and ability to care for himself upon arrival at API.  It was a violation of D.T.'s due process rights to order his commitment based on grounds that were not raised in the petition, but that error does not invalidate or taint factual findings that are rooted in evidence and support a ground of which D.T. had notice and a fair opportunity to rebut.[13]

Further, the court did not "cabin" its findings to specific grounds for commitment.  The court's order stated that D.T. was likely to cause serious harm to himself because "[h]e will place himself in dangerous situations, like the one he was rescued from."  The court found D.T. was likely to cause harm to others because "he will place himself in a dangerous situation where he needs rescuing."  Finally, the court

---

[11]    D.T. does not suggest the court's factual findings were clearly erroneous.

[12]    *See id.* at 494 (explaining that, if respondent had notice magistrate was considering additional legal theory for commitment, respondent "may have performed a more thorough cross-examination on the testimony relevant to that issue").

[13]    *Id.* at 493 (explaining due process requires "that a respondent be notified in such a manner that . . . [allows for] a reasonable opportunity to prepare" (alterations in original) (quoting *Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 380 (Alaska 2007))).

found D.T. was gravely disabled based on complete neglect of his basic needs and based on his incapacity because he "will cause harm to himself by placing himself in dangerous situations while attempting to get to Russia."[14]

It is clear that the same factual findings supported all four statutory grounds for commitment. D.T. does not provide any persuasive reason why the court's use of factual findings to support grounds not listed in the petition should invalidate or taint the use of the same factual findings to support the ground that was alleged. Because the court's error does not require us to invalidate its factual findings, we must determine whether those factual findings reflect clear and convincing evidence that D.T. was gravely disabled due to his complete neglect of his basic needs.

### B. The Superior Court's Findings Reflect Clear And Convincing Evidence That D.T. Was Gravely Disabled.

D.T. asserts that the court's findings do not show clear and convincing evidence that he was gravely disabled due to his complete neglect of his basic needs. He argues that the record demonstrates the opposite, pointing out that testimony "shows an ability to attend to his basic needs" in that he successfully traveled from Kansas City to Alaska "with no apparent trouble or danger to himself," he was generally capable of obtaining food and lodging, and he took care of his activities of daily living while at API.

---

[14] Similarly, in the court's oral decision, it found that D.T. was likely to act on his delusions and continue traveling to Russia by raft, so he was likely to cause serious harm to himself and "tangentially . . . cause serious harm to others" who would be called to rescue him. The court then found D.T. was gravely disabled because "once again, . . . that situation" made it highly probable that D.T. would suffer "serious ac[cident] or illness or death."

A superior court may grant a commitment petition alleging grave disability "if it finds, by clear and convincing evidence,"[15] that "as a result of mental illness" the individual "is in danger of physical harm arising from such complete neglect of basic needs for food, clothing, shelter, or personal safety as to render serious accident, illness, or death highly probable if care by another is not taken."[16] "Clear and convincing evidence is 'that amount of evidence which produces . . . a firm belief or conviction about the existence of a fact to be proved.' "[17]

Here, the court found that "there's no way to ensure" D.T. would take medication to treat his mental illness if released; that he "has no consistent, stable housing"; and that he had "inadequate clothing" for the conditions he faced. The evidence supporting the court's findings leaves us with a firm conviction that physical harm to D.T. was highly probable because of his complete neglect of his basic needs.[18] D.T.'s mother testified that he had recently rejected an offer of housing and had never consistently taken medication. The psychiatrist testified that D.T.'s clothing was inadequate for the cold and that he was generally unprepared to travel in extreme conditions. And D.T. "was very much wanting" to leave API to continue traveling by raft to Russia, in which case he would be back in conditions that could cause "death and all sorts of terrifying . . . outcomes."

---

[15] AS 47.30.735(c); *In re Necessity for the Hospitalization of Tracy C.*, 249 P.3d 1085, 1091 (Alaska 2011).

[16] AS 47.30.915(11)(A).

[17] *In re Necessity for the Hospitalization of Meredith B.*, 462 P.3d 522, 526 (Alaska 2020) (alteration in original) (quoting *In re Necessity for the Hospitalization of Jeffrey E.*, 281 P.3d 84, 87 (Alaska 2012)).

[18] *Cf. id.* at 524-26 (affirming superior court's grave disability determination based on evidence that respondent had not taken medication for her paranoid schizophrenia for several years and had been living naked with nothing but blankets in an inoperable car).

Evidence showing D.T. had the ability to travel from Kansas City to Alaska and to take care of himself while at API does not render the court's grave disability determination erroneous. Although D.T. reached Prudhoe Bay without suffering apparent physical harm, that does not undercut the court's finding that D.T. *would be* "in danger of physical harm" if he were to be released. The psychiatrist's testimony supports the court's finding that D.T. "would go find a raft" and "would go out into the ocean" where "serious ac[cident] or illness or death" would be highly probable. D.T.'s past ability to survive harsh conditions does not preclude a finding that upon release he would be in danger because of his complete neglect of his basic needs.[19] Further, we have stated that "general evidence of some ability to function independently is usually insufficient to overcome specific, forward-looking predictions based on expert testimony."[20] But D.T.'s ability to function while receiving treatment at API does not preclude a grave disability determination because it does not demonstrate that he can live safely without "care by another."[21]

D.T. ultimately asks us to reinterpret the record. He asserts that he had not been neglecting his basic needs because he was not malnourished or frostbitten when he came to API and because he had food and money with him while traveling. The superior court acknowledged that D.T. had "some money" and "some clothing," but found that his preparations were inadequate. It determined that D.T.'s ability to travel long distances with minimal supplies merely showed "tenacity or . . . the extent of his delusions." The court did not ignore D.T.'s evidence, and he cannot establish

---

[19]     *See* AS 47.30.915(11)(A).

[20]     *In re Necessity for the Hospitalization of Naomi B.*, No. S-16888, 2020 WL 2551862, at *4 (Alaska May 20, 2020).

[21]     *See* AS 47.30.915(11)(A).

error by recasting evidence to support his position.[22] "[T]he trial court is the most appropriate forum in which to evaluate and weigh competing fact-based arguments" about whether commitment is justified.[23] Consequently, we will not substitute D.T.'s interpretation of the record for that of the superior court.[24]

## V. CONCLUSION

We AFFIRM the court's decision to issue the 30-day commitment order based on grave disability under AS 47.30.915(11)(A). We REVERSE the court's decision to issue the order based on grave disability under AS 47.30.915(11)(B) and likelihood of causing serious harm to self and others under AS 47.30.915(15). We VACATE the corresponding portions of the order, and REMAND for the court to issue a corrected order.

---

[22] *See In re Meredith B.*, 462 P.3d at 526 (rejecting argument that "evidence could be read to show that she is homeless and withdrawn instead of 'gravely disabled' " because clear and convincing evidence supported finding that respondent "was in danger of physical harm due to her neglect of her basic needs").

[23] *In re Necessity for the Hospitalization of Reid K.*, 357 P.3d 776, 781 (Alaska 2015).

[24] *See In re Necessity for the Hospitalization of Connor J.*, 440 P.3d 159, 166 (Alaska 2019) ("[W]e will not reweigh [the] evidence if the record supports the court's finding." (second alteration in original) (quoting *In re Necessity for the Hospitalization of Jacob S.*, 384 P.3d 758, 766 (Alaska 2016))).