NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| In the Matter of the Necessity for the Hospitalization of | ) ) ) | Supreme Court No. S-18552 |
| DOMINIC N. | ) ) ) | Superior Court No. 3AN-21-02585 PR |
| | ) ) ) ) | MEMORANDUM OPINION AND JUDGMENT* |
| | ) | No. 2056 – November 13, 2024 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Ian Wheeles, Judge.

Appearances: Tristan Bordon, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for Dominic N. Laura Fox, Senior Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for State of Alaska.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

## I. INTRODUCTION

A man appeals an involuntary commitment order issued by the superior court. The order was based on the recommendations of a magistrate judge who presided at the commitment hearing, acting as a superior court master. The man raises several arguments on appeal, but because he failed to object to the master's recommendations,

---

\* Entered under Alaska Appellate Rule 214.

we hold that he failed to preserve these arguments for our review. We therefore review the superior court's decision for plain error. Because it was not a plain error for the court to find that the man was likely to harm others as a result of a mental illness, we affirm the commitment order.

## II. FACTS AND PROCEEDINGS

### A. Background Facts And Prior Proceedings

Dominic N.[1] has a neurodevelopmental disorder, among other mental health conditions. According to Dominic's medical provider, these conditions limit his impulse control, his ability to meet his basic needs, and his ability "to recognize the damage that would be caused by engaging in inappropriate sexual activities."

The State charged Dominic with multiple felonies in 2020, alleging that he had committed sexual assaults against young children. The superior court found that Dominic was incompetent to stand trial on those charges and ordered him committed to the Alaska Psychiatric Institute (API) for competency restoration.[2] After the court's competency restoration orders expired and the State dismissed the charges against Dominic, the court ordered him hospitalized for evaluation for civil commitment.[3]

At the time Dominic filed this appeal, he had been involuntarily committed under successive court orders since March 2021.[4]

---

[1] We use a pseudonym to protect the appellant's privacy.

[2] *See* AS 12.47.110(a) (providing that upon finding defendant incompetent to stand trial, court "shall commit a defendant charged with a felony . . . for further evaluation and treatment until the defendant is mentally competent to stand trial").

[3] *See* AS 47.30.700(a)-(b) (outlining process for petitioning court for order authorizing hospitalization for evaluation and providing criteria for evaluating petition).

[4] In May 2023, the superior court denied a subsequent petition to extend Dominic's involuntary commitment by an additional 180 days. *In re Hospitalization of D. N.*, No. 3AN-21-02585 PR (Alaska Super., May 15, 2023). The State has appealed the court's decision in that case; we stayed that appeal pending the resolution of this case and Dominic's separate appeal in another case.

**B.      Proceedings At Issue In This Appeal**

API petitioned the superior court in September 2022 to extend Dominic's commitment for an additional 180 days.  In its petition, API alleged that Dominic was mentally ill and as a result likely to cause serious harm to himself, likely to cause serious harm to others, and gravely disabled.  A magistrate judge, acting as a superior court master, held a hearing at API to consider the commitment petition.

**1.      The commitment hearing**

The State called Dominic's medical provider, a doctor of nursing practice at API, as its only witness.  At the time of the hearing, the witness had recently taken over responsibility for Dominic's care from another provider.

The medical provider testified that Dominic had been diagnosed with "an unspecified neurodevelopmental disorder."  The provider explained that people with neurodevelopmental disorders "tend to have a limited amount of executive functioning," which affects a person's ability to do things like manage their finances.  Due to this neurodevelopmental disorder, Dominic "demonstrated minimal insight into understanding emotions and the importance of social skills."

The provider also stated that he "definitely believe[d]" that Dominic "exhibit[ed] antisocial personality traits" and that these traits were "relevant" to understanding Dominic's mental health.  The provider testified that Dominic's antisocial personality traits included "lack of remorse or inability to understand another person's emotions."  However, the provider explained that he had not diagnosed Dominic with antisocial personality disorder because Dominic had not yet undergone a psychometric personality assessment.

The provider attributed Dominic's abrupt periods of anger and inappropriate sexual behaviors to both his neurodevelopmental disorder and his antisocial personality traits.  He testified that with these conditions, "there is a sense of inability to relate to others' emotions and a lack of remorse for engaging in dangerous

violent behaviors." He also explained that Dominic had poor impulse control, which the provider attributed "primarily" to Dominic's neurodevelopmental disorder.

The provider opined that Dominic "would eventually cause serious harm to others" if he were released from API. He testified that the most recent occasion on which Dominic had caused, attempted, or threatened harm to another person took place about eight months before the hearing. During that incident Dominic "was fixated on" a female staff member at API and attempted to touch her; he then attempted to assault a staff member who tried to redirect him. The provider also highlighted the "intensity" of Dominic's less recent "acts of aggression towards others." He related that Dominic had been admitted to API "following charges of pretty severe sexual assaults . . . on minors" that were "so severe" that a child he assaulted required reconstructive surgery.

The provider acknowledged that staff at API had observed "an overall decrease in aggressive behavior since [Dominic] was admitted" to API, which the provider attributed in part to the effects of medication. But Dominic still had "limited insight into why understanding emotions [is] important or appropriate for social skills" and had been observed "laughing at peers when they were upset" in the week prior to the hearing. The provider stated that he did not think Dominic "would be able to recognize the damage that would be caused by engaging in inappropriate sexual activities." The provider also opined that Dominic might not have consistent access to medications to manage his "aggressive behavior" if he were discharged from API.

Dominic testified on his own behalf. He said that he wanted to be released from API and "go to facility housing" or "go back to [his] village." When asked whether people in his village were worried that he might assault others, Dominic stated, "I want to stay in Anchorage and I won't hurt no little kids when I go back home." Dominic later amended that statement, explaining that he wanted to stay in Anchorage "because [he] might hurt little kids again" if he went home.

During closing argument before the master, Dominic's attorney argued that the evidence was insufficient to show that Dominic was likely to cause serious

harm to others, in part because "it [had] been some time since [he had] expressed or manifest[ed] the desire to cause serious harm." The attorney conceded there was evidence that Dominic was gravely disabled, but argued the evidence was not sufficient to show that Dominic's condition was likely to improve with future treatment.

### 2. The master's recommendations and superior court order

In a proposed order, the master recommended finding that Dominic was mentally ill. The proposed order stated, "The court takes judicial notice of the previous findings," referring to findings in Dominic's prior commitment orders. The proposed order also stated that Dominic had been diagnosed with "Unspecified Neurodevelopmental Disorder . . . and likely Antisocial Personality Disorder," among other conditions, and that he had "[consistently] demonstrated [poor] impulse control, lack of empathy, aggression, anger, suicidal ideation and sexual misconduct." It stated that Dominic also had "very poor executive functioning" and had been "charged with serious sexual misconduct involving a three-year-old child, and continue[d] to show a lack of remorse or empathy."

The master recommended finding that Dominic was likely to cause serious harm to others as a result of his mental illness because, although Dominic's "last display of aggression and assaultiveness" had been several months earlier, "he continue[d] to show a significant lack of empathy or social skills so that outside of a controlled environment, he [was] very likely to act on his anger and impulsiveness again." "Given the serious nature of his past misconduct," the master explained, "he continue[d] to be at high risk to others until he is able to demonstrate some degree of insight and empathy."

Finally, the master recommended finding that Dominic was gravely disabled and "unable to meet his basic needs without significant intervention, oversight, and support" because of his "low executive functioning ability."[5]

Dominic did not file any objections to the master's recommendations. The superior court adopted the master's recommendations without modification and issued a 180-day commitment order.

Dominic appeals.

## III. STANDARD OF REVIEW

We exercise our independent judgment when determining the appropriate standard of review[6] and deciding whether a party preserved an issue for appeal.[7] We also exercise our independent judgment when interpreting the mental health commitment statutes and court rules.[8] "Under the independent judgment standard we adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[9]

When a party raises an issue on appeal after failing to preserve it in earlier proceedings, we review the resolution of that issue for plain error.[10] In most cases, to show a plain error, a party must identify "an 'obvious mistake' that is 'obviously prejudicial.' "[11]

---

[5]     The master did not recommend finding that Dominic was likely to cause harm to himself. Neither party to this appeal challenges the court's conclusion on that issue.

[6]     *Hutton v. State*, 350 P.3d 793, 795 (Alaska 2015).

[7]     *Jones-Nelson v. State*, 512 P.3d 665, 670 (Alaska 2022).

[8]     *In re Hospitalization of Carl S.*, 510 P.3d 486, 491 (Alaska 2022).

[9]     *Id.* (quoting *Shea v. State, Dep't of Admin., Div. of Ret. & Benefits*, 204 P.3d 1023, 1026 (Alaska 2009)).

[10]     *In re Hospitalization of Tonja P.*, 524 P.3d 795, 800 (Alaska 2023).

[11]     *In re Hospitalization of Connor J.*, 440 P.3d 159, 163 (Alaska 2019) (quoting *In re Hospitalization of Gabriel C.*, 324 P.3d 835, 838 (Alaska 2014)). *But*

## IV. DISCUSSION

Dominic advances several arguments on appeal that he did not raise in objections regarding the master's recommendations to the superior court. We hold that by failing to raise timely objections to the master's recommendations, Dominic failed to preserve these arguments for appeal. We therefore review these arguments for plain error. We conclude it was not a plain error to find that Dominic was mentally ill and as a result likely to harm others. Because that finding was sufficient to support the commitment order, we do not decide whether it was a plain error to find that Dominic was also gravely disabled. We affirm the commitment order.

### A. Dominic's Failure To Object To The Master's Recommendations Forecloses All But Plain Error Review.

The Alaska Probate Rules govern trial court practice and procedure in Title 47 commitment cases.[12] These rules allow the superior court to refer commitment hearings to a master,[13] who may preside at the hearing and issue recommendations to the superior court,[14] and also specify a procedure for filing objections to the master's recommendations.[15] These rules further provide that when a party files objections to a master's recommendations, the superior court "may permit oral argument, order additional briefing or the taking of further evidence, or grant a hearing de novo."[16]

Under these rules, a superior court master presided at Dominic's commitment hearing. Dominic presented arguments against commitment in his closing

---

*see Charles v. State*, 326 P.3d 978, 987 (Alaska 2014) (explaining different rule that applies when "deciding whether it was plain error not to apply a not-yet-announced constitutional rule").

[12]     Alaska R. Prob. P. 1(b).

[13]     Alaska R. Prob. P. 2(b)(2)(C).

[14]     Alaska R. Prob. P. 2(e).

[15]     Alaska R. Prob. P. 2(f)(1).

[16]     *Id.*

argument to the master, but after the master recommended that the court issue a 180-day commitment order, Dominic did not renew his arguments by filing an objection in the superior court. The court later adopted the master's recommendations in full. In this appeal, Dominic raises some of the same arguments he originally presented only to the master. We therefore must decide how Dominic's failure to object to the master's recommendations affects the scope of our review on appeal.

We considered the same issue in *Carter K*. The appellant in that case had failed to object to an aspect of the master's recommendations that he sought to challenge on appeal.[17] We held that Alaska Probate Rule 2 requires any party who disagrees with a master's finding to file a timely objection.[18] And a "failure to object precludes appellate review except for plain error."[19] Given that Dominic failed to object to the master's recommendations, he failed to preserve his argument for appellate review.

Dominic argues that we should create an exception to allow full appellate review of involuntary commitment orders even in the absence of timely objections to masters' recommendations because limiting the scope of our review would deprive trial courts of some "useful guidance by analogy."[20] We do not find this argument persuasive. Dominic is correct that the public interest exception to the mootness doctrine is designed in part to allow the development of case law that will provide useful guidance to trial courts in future cases.[21] But we have not recognized a similar exception to the rules governing issue preservation, which balance "important judicial

---

[17] *In re Hospitalization of Carter K.*, __ P.3d __, Op. No. 7728 at 6, 2024 WL 4509862, at *3 (Alaska Oct. 17, 2024).

[18] *Id.*, Op. No. 7728 at 7-9, 2024 WL 4509862, at *4-5.

[19] *Id.*, Op. No. 7728 at 7, 2024 WL 4509862, at *4.

[20] *See In re Hospitalization of Naomi B.*, 435 P.3d 918, 928-29 (Alaska 2019).

[21] *See id.*

policies" related to efficiency and accurate adjudication against the judgment that certain serious errors demand relief regardless of how a case was litigated in the trial court.[22] We decline to alter that balance by creating a new exception in this case.

**B.      It Was Not Plain Error For The Superior Court To Find That Dominic Was Likely To Harm Others Because Of A Mental Illness.**

In this appeal, Dominic argues that the superior court erred by finding that he was mentally ill and as a result was likely to harm others. He argues that the court improperly relied on evidence of his neurodevelopmental disorder to support its finding that he was mentally ill, that the court erred by admitting his provider's medical opinion testimony about antisocial personality disorder, that there was insufficient support for the court's finding that he "likely" had an antisocial personality disorder, and that the State failed to prove Dominic "poses a substantial risk of harm to others" based on "recent behavior causing, attempting, or threatening harm."[23] As explained above, because Dominic failed to preserve these arguments by filing a timely objection to the master's recommendations, we review the court's decision for plain error. The record reveals no such error.

The court found that Dominic had a mental illness in part because he was "diagnosed with . . . likely Antisocial Personality Disorder." Trial testimony supported this finding: Dominic's provider, who was familiar with his medical history, testified that Dominic "definitely" exhibited antisocial personality traits, which were a cause of his "abrupt periods of anger" and could contribute to an "inability to relate to others' emotions and a lack of remorse for engaging in dangerous violent behaviors." It was not a plain error to admit the provider's expert testimony about these traits[24] or to

---

[22]    *See Johnson v. State*, 328 P.3d 77, 82-84 (Alaska 2014).

[23]    AS 47.30.915(15)(B).

[24]    *See Marron v. Stromstad*, 123 P.3d 992, 1008 (Alaska 2005) (explaining that medical expert's testimony "must be within a 'reasonable medical certainty' or the

conclude from this testimony that Dominic had a mental illness that was "more than" his neurodevelopmental disorder, regardless of whether that disorder alone could support a finding of mental illness.[25] Nor was it a plain error to find that Dominic was likely to harm others because of this mental illness. Dominic's provider testified that while at API, Dominic had "fixated on" a female staff member and assaulted another staff member who tried to redirect him. The provider attributed Dominic's "inappropriate sexual behaviors" in part to his antisocial personality traits. The provider's uncontradicted testimony and findings about Dominic's behavior made in his prior civil commitment cases[26] supported the court's conclusion that the "inappropriate sexual behaviors" the provider identified, including "serious sexual misconduct," as well as Dominic's anger, impulsiveness, and lack of empathy demonstrated that he presented a substantial risk of harm to others. On this record, it was not plain error to conclude that Dominic's threatening behavior while at API was "recent" and showed by clear and convincing evidence that he was likely to harm others because of a mental illness.[27]

---

equivalent 'reasonable medical probability' to be admissible" (quoting *Maddocks v. Bennett*, 456 P.2d 453, 457-58 (Alaska 1969))); *Barton v. N. Slope Borough Sch. Dist.*, 268 P.3d 346, 350 (Alaska 2012) (noting that we extend "wide latitude" to trial judges "in deciding whether to admit the testimony of an expert witness" (quoting *Barrett v. Era Aviation, Inc.*, 996 P.2d 101, 103 (Alaska 2000))).

[25]     *See In re Hospitalization of Dominic N.*, 548 P.3d 630, 636 (Alaska 2024) (concluding that evidence of mental disorder that was "more than [the respondent's] developmental and intellectual disabilities" supported finding of mental illness).

[26]     *See* AS 47.30.740(c) (providing for admissibility in 90-day commitment hearing of "[f]indings of fact relating to the respondent's behavior made at a 30-day commitment hearing"); AS 47.30.770(d) (providing for admissibility in 180-day commitment hearings of same findings made following 30-day commitment hearing, 90-day commitment hearing, or previous 180-day commitment hearing).

[27]     *See In re Hospitalization of G.L.*, 449 P.3d 694, 699-700 (Alaska 2019) (affirming finding of mental illness based in part on respondent's behavior "a few months before" commitment hearing).

## V. CONCLUSION

We AFFIRM the judgment of the superior court.