*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| In the Matter of the Necessity for the Hospitalization of | ) ) ) | Supreme Court No. S-14256 |
| GABRIEL C. | ) ) | Superior Court No. 3AN-11-00358 PR |
| | ) ) | O P I N I O N |
| | ) ) | No. 6886 – April 4, 2014 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Sen K. Tan, Judge.

Appearances: Kelly R. Taylor, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellant. Michael G. Mitchell, Senior Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee. Meg Allison Zaletel and Mark Regan, Anchorage, for Amicus Curiae Disability Law Center of Alaska.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

BOLGER, Justice.

## I.     INTRODUCTION

The respondent in a mental health commitment proceeding argues that the delay between his detention and his involuntary commitment hearing violated time limits

imposed by statute and due process of law. But we conclude that the relevant statutory time limit begins upon a respondent's arrival at an evaluation facility, that there was no obvious or prejudicial statutory violation in this case, and that the delay in this case did not violate due process. We also conclude that the respondent's appeal of his involuntary medication order is now moot.

## II.   FACTS AND PROCEEDINGS

On Sunday, February 20, 2011, Gabriel C.[1] was taken into protective custody by the Kenai Police Department, after his family reported that he was off his psychiatric medication and displaying erratic and threatening behavior. He was transported to Central Peninsula Hospital, where a licensed clinical social worker conducted an emergency examination and prepared a petition for involuntary commitment.

That same day, at 5:00 p.m., an Anchorage committing magistrate signed an ex parte order authorizing Gabriel to be transported to Alaska Psychiatric Institute (API) for evaluation.[2] The order stated that the evaluation had to be completed within 72 hours of Gabriel's arrival at that facility. The Public Defender Agency was appointed and granted access to Gabriel's records. The following day was a judicial holiday, so the master's order was not approved by the superior court until February 22. After the judge signed the order, it was distributed to the Attorney General's Office, the Public Defender Agency, and to API.

Gabriel was not transported to API until late the next day, arriving at about 1:30 a.m. on Thursday, February 24. On Monday, February 28, API filed a petition for

---

[1]     We use a pseudonym to protect Gabriel's privacy.

[2]     Under Alaska Probate Rule 2(b)(3)(C), a master's order of commitment is effective pending superior court review.

a 30-day commitment and a petition for permission to administer psychotropic medication. A master held a hearing the following day — Tuesday, March 1, at 1:55 p.m. — and approved API's requests. At the hearing, Gabriel's counsel objected to the delay in transportation following the ex parte order, but she conceded that, after excluding the intervening weekend, the hearing was held within 72 hours of Gabriel's arrival at API. The master commented that he had been told that API had been routinely refusing to accept patients referred for involuntary evaluation,[3] and on review, the superior court noted that the delay was possibly caused by an API policy to delay accepting patients when its capacity had been reached.

Gabriel filed timely objections to the master's report, and the superior court affirmed the master's approval of API's requests as to both commitment and medication. Gabriel now appeals, arguing that the delay in the hearing violated the 72-hour statutory deadline for a commitment hearing and his constitutional right to due process of law, and that the order for involuntary medication was entered in error.

---

[3]  The master stated:

> [T]here are a number of cases . . . and I know this from talking to the magistrate in Seward. . . . [T]hat they've called and made arrangements to bring somebody to API and API says don't bring them, you hold them there. Whether it's in a jail or a hospital somewhere people are being held in the Mat-Su Valley and Seward or Kenai and they can't come to the hospital until the hospital says they can come here.

## III. STANDARD OF REVIEW

We apply our independent judgment to the interpretation of the Alaska Constitution and the mental health commitment statutes.[4] We also apply our independent judgment to determine if a pending controversy is moot.[5]

## IV. DISCUSSION

### A. Violation Of The Statutory Deadline For A Commitment Hearing Was Not Plain Error.

After a person is detained by a police officer and brought to an evaluation facility, a physician and a mental health professional must conduct an emergency evaluation within 24 hours.[6] If warranted, the mental health professional may apply for an ex parte order authorizing hospitalization for a full evaluation.[7] If authorized, the full evaluation must be completed within 72 hours.[8]

The 72-hour time limit is referenced in different parts of the commitment statutes. Alaska Statute 47.30.715 states that "[w]hen a facility receives a proper order for evaluation, it shall accept the order and the respondent for an evaluation period not to exceed 72 hours." Later in the same section, the statute states that the court shall set a time for a commitment hearing "within 72 hours after the respondent's arrival."[9] In addition, AS 47.30.725(b) states:

---

[4] *Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 375 (Alaska 2007).

[5] *In re Tracy C.*, 249 P.3d 1085, 1089 (Alaska 2011).

[6] AS 47.30.710(a).

[7] AS 47.30.710(b).

[8] AS 47.30.715.

[9] *Id.*

> Unless a respondent is released or voluntarily admitted for treatment within 72 hours of arrival at the facility or, if the respondent is evaluated by evaluation personnel, within 72 hours from the beginning of the respondent's meeting with evaluation personnel, the respondent is entitled to a court hearing to be set for not later than the end of that 72-hour period.

Finally, under AS 47.30.805(a), computation of the evaluation period does not include "Saturdays, Sundays, legal holidays, or any period of time necessary to transport the respondent to the treatment facility."

Gabriel C. argues that the evaluation period begins to run immediately after the court issues an order authorizing an evaluation, even when the order authorizes transportation to another facility. But this argument is not consistent with the language of the statute. As noted above, AS 47.30.715 states that the "evaluation period" for a full evaluation begins to run when the evaluation facility accepts "the order and the respondent." This language implies that the "evaluation period" does not begin until after the court issues its order authorizing hospitalization for a full evaluation. And both AS 47.30.715 and AS 47.30.725(b) refer to the respondent's "arrival" at the facility where the evaluation is to be conducted. We thus interpret these statutes to require that, if the ex parte order authorizes the respondent's transportation to another facility for evaluation, the 72-hour period begins upon the respondent's arrival at that facility.

In this case, the 72-hour deadline did not begin to run until Gabriel's arrival at API. But there is no dispute that the commitment hearing was actually held more than 12 hours after the statutory deadline.

In the superior court, Gabriel did not argue that his hearing was held more than 72 hours after his arrival at API. So we review this issue for plain error.[10] A plain error involves an "obvious mistake" that is "obviously prejudicial."[11] Here, the violation of the statutory deadline would not have been obvious to the master who held the commitment hearing. After excluding the intervening weekend, the hearing was held on the third day following Gabriel's arrival at API, and his attorney conceded that it did not appear that the State had exceeded the deadline following his arrival at that facility.[12]

We likewise conclude that Gabriel suffered no obvious prejudice from this delay. Gabriel does not dispute that the superior court had a sufficient basis for the order of involuntary commitment. So Gabriel likely would have been confined for the same period, even if the hearing had been held 12 hours earlier.

However, the commitment statutes also suggest that a respondent must be transported to an evaluation facility without delay. For example, under AS 47.30.710(b), the mental health professional who performs the initial emergency examination may be required to arrange for the patient's hospitalization "on an *emergency* basis."[13] Under AS 47.30.715, after an evaluation facility receives an ex parte order for evaluation, "it *shall* accept the order *and the respondent* for an evaluation period not to exceed 72

---

**10** *See Paula E. v. State, Dep't of Health & Soc. Servs.*, 276 P.3d 422, 436 (Alaska 2012).

**11** *Adams v. State*, 261 P.3d 758, 773 (Alaska 2011); *State, Dept. of Rev. v. Mitchell*, 930 P.2d 1284, 1288 (Alaska 1997) (internal citations and quotation marks omitted).

**12** The superior court found that Gabriel conceded that API conducted the hearing within 72 hours. And, while Gabriel objected to the master's report on a number of grounds, he did not object to the delay at API.

**13** AS 47.30.710(b) (emphasis added).

hours."[14]   Taken together, these provisions evidence a legislative intent that the respondent who is subject to an emergency ex parte order must be transported immediately to the nearest evaluation facility so that the 72-hour evaluation period can begin without delay.

In this case, the record does not establish the cause for the delay in Gabriel's transportation.  But it is clear to us that the legislature did not intend to authorize these evaluations to be delayed simply because the nearest designated evaluation facility is filled to capacity.

In its brief on appeal, the State attached a Uniform Administrative Order stating that, if a respondent cannot be transported to an evaluation facility within 24 hours of the ex parte order, the State is required to file a status report with the court that issued the order.  The assigned judicial officer may then take any necessary action.  And at oral argument, the State conceded that this action could include an evaluation by qualified personnel at another facility.  There may be other alternatives.  But we take this opportunity to stress that the assigned judicial officer should not hesitate to take appropriate action to expedite an evaluation if the respondent cannot be transported to the initially designated facility without delay.

### B.     The Delay In The Commitment Hearing Did Not Violate Due Process.

Gabriel also contends that the delay in this case violated his constitutional right to due process of law.  We apply a three-part balancing test to determine what process is due, including:  (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures

---

[14]     AS 47.30.715 (emphasis added).

used; and (3) the State's interest, including the fiscal and administrative burdens of additional procedural requirements.[15]

We have previously recognized that involuntary commitment is a "massive curtailment of liberty" that cannot be imposed without due process protections.[16] On the other hand, many other jurisdictions have allowed delays more substantial than Gabriel endured for an evaluation of a respondent and preparation for a commitment hearing.[17] But even if we assume that the first and third factors favor Gabriel's argument, his due process claim must fail because he has not shown that the delay in this case created any risk of an erroneous deprivation of his liberty.

In both the criminal and civil context, a litigant must show prejudice in order to establish a due process violation for excessive delay.[18] In this case, Gabriel does not dispute that his hospitalization was based on the order of a neutral master who found probable cause to believe that Gabriel was mentally ill and that he was gravely disabled or presented a likelihood of causing serious harm to himself or others. And there is

---

[15]     *Bigley v. Alaska Psychiatric Inst.*, 208 P.3d 168, 181 (Alaska 2009).

[16]     *Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 375-76 (Alaska 2007) (quoting *Humphrey v. Cady*, 405 U.S. 504, 509 (1972)).

[17]     *See, e.g.*, *Project Release v. Prevost*, 722 F.2d 960, 967, 974-75 (2d Cir. 1983) (upholding statute providing for involuntary commitment of up to 60 days, with a hearing available within five days of demand); *Curnow v. Yarbrough*, 676 P.2d 1177, 1182, 1185 (Colo. 1984) (en banc) (upholding statutory scheme requiring no commitment hearing unless requested, but mandating a hearing within ten days of a request); *N.M. Dep't of Health v. Compton*, 34 P.3d 593, 598-600 (N.M. 2001) (finding no due process violation where statutory scheme required hearing within seven days of confinement and hearing did not occur until 14 days after respondent was detained).

[18]     *Brandal v. State, Commercial Fisheries Entry Comm'n*, 128 P.3d 732, 740 (Alaska 2006) ("[W]e have never held that delay alone, with no accompanying prejudice, constitutes a violation of the right to due process.") (internal citations omitted).

likewise no dispute that the superior court properly found, by clear and convincing evidence, that Gabriel was mentally ill and gravely disabled. Gabriel does not allege that his ability to refute these findings was impeded by the delay of his commitment hearing. We therefore conclude that the delay in this case did not create any risk of an error in Gabriel's commitment.

## C. The Involuntary Medication Issue Is Moot.

Gabriel argues that it was error for the superior court to affirm the master's conclusions that he lacked capacity to give and withhold informed consent, and that involuntary medication was in his best interests.

We conclude that the involuntary medication issue is moot. "[A] claim is moot if it is no longer a present, live controversy, and the party bringing the action would not be entitled to relief, even if it prevails."[19] Gabriel's appeal of the involuntary medication order is moot because the record indicates that the order lapsed when his commitment ended.

Under the collateral consequences doctrine we may choose to decide a case that would otherwise be moot if the judgment carries "indirect consequences in addition to its direct force, either as a matter of legal rules or as a matter of practical effect."[20] But a person must first be involuntarily committed before non-emergency involuntary administration of medication can occur.[21] Thus, once the involuntary medication issue arises, the respondent has already been involuntarily committed, and the collateral

---

[19] *In re Tracy C.*, 249 P.3d 1085, 1090 (Alaska 2011) (internal citation and quotation marks omitted).

[20] *In re Joan K.*, 273 P.3d 594, 597-98 (Alaska 2012).

[21] *See Myers v. Alaska Psychiatric Inst.*, 138 P.3d 238, 242 (Alaska 2006).

consequences as to the precipitating incident have already attached.[22] Gabriel argues that the involuntary medication order in this case carries additional collateral consequences for him, but he does not detail those consequences. We conclude that the collateral consequences doctrine does not apply to this situation.

We may also consider the merits of a claim that would otherwise be moot if the claim falls within the public interest exception to the mootness doctrine.[23] We examine three factors to determine whether the public interest exception applies: "(1) whether the disputed issues are capable of repetition, (2) whether the mootness doctrine, if applied, may cause review of the issues to be repeatedly circumvented, and (3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine."[24] Gabriel argues that his challenge to the involuntary medication order satisfies the public interest exception.

Gabriel claims that this situation "was not unusual and could recur." Gabriel claims this court should consider his challenge because "[t]rial courts currently have little guidance as to what information is legally appropriate to consider when deciding an individual's capacity." In other words, Gabriel urges this court to examine the merits of his claim because future courts might benefit from the guidance an opinion

---

[22]     *See Joan K.*, 273 P.3d at 598 ("We conclude that there are sufficient general collateral consequences . . . to apply the doctrine in an otherwise-moot appeal from a person's first involuntary commitment order. But we do note that some number of prior involuntary commitment orders would likely eliminate the possibility of additional collateral consequences, precluding the doctrine's application.") (internal citation omitted).

[23]     *Tracy C.*, 249 P.3d at 1090.

[24]     *Id.* (internal quotation marks omitted).

may provide. But the same argument could be made for every moot involuntary medication order, and indeed of every moot case in general.

We conclude that we should not review the involuntary medication order because it has now expired. But we note that there is a serious issue concerning whether the superior court made adequate findings regarding the respondent's best interests. In *Myers v. Alaska Psychiatric Institute*, we required a court permitting the involuntary administration of medication to make findings on several best interests factors: (1) the extent and duration of changes in behavior patterns and mental activity caused by the treatment; (2) the risks of adverse side effects; (3) the experimental nature of the treatment; (4) its acceptance by the medical community of the state; and (5) the extent of intrusion into the patient's body and the pain associated with the treatment.[25]

In this case, the master made findings on these factors when he issued his recommendation. Gabriel made a timely objection to the master's findings, so the superior court was required to address the issue de novo.[26] The superior court, in reviewing the master's medication recommendation, discussed the conflicting testimony regarding Gabriel's competence. But the court did not make specific findings on the best interest factors or expressly incorporate the master's findings on this issue. We take this occasion to note that the superior court must expressly make or incorporate specific findings on each of these best interest factors in a case where involuntary medication is requested.

---

[25]     138 P.3d at 252.

[26]     Alaska Civil Rule 53(d)(2)(B) states that "if any party files objections to [a master's] report, the court . . . must consider under a de novo standard of review all objections to findings of fact made or recommended in the report, and must rule on each objection."

## V. CONCLUSION

We AFFIRM the superior court's decision granting the petition for involuntary commitment, and we DISMISS Gabriel's appeal of the involuntary medication order.