*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| In the Matter of the Necessity for the Hospitalization of | ) ) Supreme Court No. S-18753 |
| | ) |
| TAVIS J. | ) Superior Court No. 3AN-23-00862 PR |
| | ) |
| | ) O P I N I O N |
| | ) |
| | ) No. 7793 – October 16, 2025 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Una S. Gandbhir, Yvonne Lamoureux, Judges.

Appearances: Rachel E. Cella, Assistant Public Defender, and Terrence Haas, Public Defender, Anchorage, for Tavis J. Laura Wolff, Assistant Attorney General, Anchorage, and Treg Taylor, Attorney General, Juneau, for State of Alaska.

Before: Carney, Borghesan, Henderson, and Pate, Justices. [Maassen, Chief Justice, not participating.]

HENDERSON, Justice.

## I.    INTRODUCTION

An individual was hospitalized on an emergency basis while awaiting a mental health evaluation following the hospital's petition. After the individual was held for two weeks without being transported to a facility that could conduct the mental health evaluation, the superior court ordered his discharge. For reasons that remain unclear, the individual remained at the hospital for an additional three days. Then, based on new information, the hospital filed another petition to detain the individual for

a mental health evaluation, which the superior court granted. The individual was detained at the hospital for another nine days before being transported to an evaluation facility. The evaluation facility subsequently petitioned for the individual's 30-day commitment, and the superior court granted the petition following a hearing.

The individual appeals, arguing first that his detention on the court's second evaluation order violated his substantive due process rights, and second, that the superior court's 30-day commitment order was unsupported by evidence that commitment was the least restrictive alternative. We agree that the individual's substantive due process rights were violated because the nature and duration of his detention were not reasonably related to the limited purpose of facilitating immediate transportation for evaluation, as required by our recent decisions in *In re Hospitalization of Mabel B.*[1] and *In re Hospitalization of Abigail B.*[2] Additionally, the parties agree that the State did not prove by clear and convincing evidence that commitment was the least restrictive alternative; we agree and vacate the superior court's 30-day commitment order.

## II. FACTS AND PROCEEDINGS

### A. Statutory Framework

Alaska law provides procedures for the involuntary commitment of individuals who are gravely disabled or who pose a risk of harm to themselves or others.[3] Where peace officers or certain health professionals have probable cause to believe that such an individual is "likely to cause serious harm of an especially immediate nature to self or others," the person may be placed in protective custody pending further evaluation.[4] When an evaluation facility receives a court order for

---

[1]   485 P.3d 1018 (Alaska 2021).

[2]   528 P.3d 440 (Alaska 2023).

[3]   *See generally* AS 47.30.700-.815.

[4]   *In re Abigail B.*, 528 P.3d at 442; AS 47.30.705.

evaluation, it must accept the individual "for an evaluation period not to exceed 72 hours."[5]  We have reasoned that the statutory framework underlying this process anticipates that the respondent "must be transported immediately to the nearest evaluation facility so that the 72-hour evaluation period can begin without delay."[6]  However, facility capacity issues have led to cases in which individuals are detained for lengthy periods while awaiting evaluation.[7]

### B.    Tavis's First Detention At The Hospital

On March 17, 2023, Tavis J.[8] was admitted to a local hospital after being found unresponsive from cardiac arrest.  Ten days later, hospital staff petitioned the superior court for an order that Tavis be transported to a designated facility that could evaluate whether he met the criteria for involuntary commitment.  The petition alleged that Tavis exhibited signs of bipolar disease and schizophrenia, as well as medical issues.  Tavis's treatment providers were concerned that he was "unable to engage in rational decision making," as he was alert and oriented only to himself, and spoke psychotically "about being in ariel barnes," but was unable to explain what that meant.  The petition indicated that hospital staff had confirmed that Tavis could be accepted within 24 hours for evaluation at the Alaska Psychiatric Institute (API), Bartlett

---

[5]      AS 47.30.715(g).

[6]      *In re Hospitalization of Gabriel C.*, 324 P.3d 835, 838 (Alaska 2014).

[7]      *See In re Hospitalization of Mabel B.*, 485 P.3d 1018, 1020-22 (Alaska 2021) (documenting more than 14 day old hold after order authorizing evaluation); *In re Abigail B.*, 528 P.3d at 443-46 (documenting approximately two week holds after orders authorizing evaluation).

[8]      We use a pseudonym to protect Tavis's privacy.

Regional Hospital, Fairbanks Memorial Hospital, PeaceHealth Ketchikan Medical Center, or Mat-Su Regional Medical Center.[9]

A superior court master issued an order the same day recommending that the petition be granted. The master's recommended order required that Tavis be transported "to the closest evaluation facility that [was] first available to accept [him]." If Tavis was not transported to an evaluation facility within 24 hours, the order required a status report every 24 hours that detailed his location, the reasons for the delay, the steps being taken to ensure the continued detention was necessary, and confirmation that no less restrictive alternatives were available. The order also required Tavis's release if a mental health professional determined that he no longer met the criteria for hospitalization, either before or during the 72-hour evaluation period. The superior court approved the master's recommendation two days later on March 29.

Despite the court's order to transport Tavis to an evaluation facility, he remained at the hospital through April 10. From March 29 to April 10, the DES/DET Coordinator[10] filed nine status reports, each stating that the "authorized evaluation facility [did] not have capacity to accept [Tavis]" and that Tavis was "expected to remain at [the hospital] unless an appropriate less restrictive placement [was] identified."

On April 10, the court held a hearing on the status of Tavis's transportation. The State explained that API was "essentially full" with "75 people in the hospital" and "24 adults on the waitlist." Despite the two weeks since the superior court granted the order for evaluation, Tavis was number four on the waitlist and the

---

[9]     The petition form requires the petitioner to complete a section affirming that they have communicated directly with the receiving facility and that the facility confirmed that it could receive the respondent within 24 hours.

[10]     DES/DET refers to Designated Evaluation Services and Designated Evaluation & Treatment, a component of the State's Department of Health and Social Services.

State was unable to offer an expected timeline for Tavis's admission. Citing our decision in *Mabel B.*, Tavis argued that his two-week detention violated his substantive due process rights under the Alaska Constitution and that he should be released. The State conceded that this argument had some "strength," but also noted that *Mabel B.* did not set a "hard deadline." The court indicated that it was struggling with the fact that the hospital had yet to discharge Tavis, which implied that he continued to meet the criteria necessary for an evaluation. But, citing our recent precedent, the court concluded that Tavis's "continued detention without having an evaluation [was] a violation of his due process rights regardless of . . . his health issues." At the conclusion of the hearing, the court dismissed the petition for evaluation without prejudice and ordered that Tavis be released from the hospital.

### C. Tavis's Subsequent Detention

### 1. The hospital's second petition

For reasons not apparent in the record, Tavis remained at the hospital in spite of the court's dismissal of the petition for evaluation.[11] On April 11, the DES/DET Coordinator filed a tenth status report, indicating that Tavis's case had been dismissed on April 10, but also that Tavis was "expected to remain" at the hospital.

The hospital conducted a psychiatric evaluation of Tavis on April 11. Tavis was diagnosed with "delirium due to multiple etiologies" and "unspecified psychosis." The evaluating psychiatrist also noted that Tavis "state[d] that he [was] ready to leave."

On April 12, the hospital filed a second petition for an order authorizing hospitalization for an emergency evaluation of whether Tavis met civil commitment criteria. The petition alleged that Tavis met the criteria for involuntary treatment

---

[11] The record does not reflect why Tavis remained at the hospital from April 10-12, including whether Tavis remained at the hospital of his own accord or due to a decision or requirement of the hospital.

because he was "unable to rationally engage in a decision-making process," was "not oriented to [the] length of [his] hospital stay or day of the week," and was "uncertain as to why he was admitted to the hospital." The petition indicated that Tavis could be accepted within 24 hours for evaluation at API, Bartlett Regional Hospital, Fairbanks Memorial Hospital, PeaceHealth Ketchikan Medical Center, or Mat-Su Regional Medical Center.

A superior court master once again issued an order the same day recommending that the hospital's petition be granted. The master found probable cause that Tavis was gravely disabled because he was "unable to have a rational discussion" and was "not oriented to time." The order required the State to arrange for Tavis's immediate delivery to the first available facility out of API, Bartlett Regional Hospital, Fairbanks Memorial Hospital, or Mat-Su Regional Medical Center, and required status reports in the event Tavis was not transported to an evaluation facility within 24 hours. On April 13, the superior court approved the master's recommendation.

From April 13 to April 20, the DES/DET Coordinator filed six status reports on transportation, all stating that none of the authorized evaluation facilities had capacity to accept Tavis and that Tavis would remain at the hospital until a less restrictive alternative was identified.

### 2. Transportation status hearing on April 20

On April 20, the court held a hearing because Tavis still had not been transported to an evaluation facility. The State recognized that Tavis had been detained on the second petition for nine days and indicated that Tavis was likely to be admitted to an evaluation facility the next day.

In response, Tavis asserted that while a new petition was filed on April 12, he had been "detained" at the hospital for 24 days. According to Tavis, despite the court ordering his release on April 10, the hospital "did not release him," and "instead filed a new petition alleging the exact same circumstances they alleged in the initial

petition." He requested that the petition be vacated. The court denied Tavis's request, reasoning that Tavis was expected to be transported to API very soon.

Immediately following the hearing, Tavis filed an expedited objection to the court's rejection of his request to vacate the petition. Tavis argued that his extended detention at the hospital from March 27 to April 20 violated his due process rights under *Mabel B*. Tavis asked the court to stay his imminent transportation to API and to immediately release him from detention. The State responded that the hospital's two petitions for evaluation were distinct requests based upon different information, and that Tavis was expected to be transported to API no later than the next day. For the first time, the State explained that Tavis had been refused from Mat-Su Regional Medical Center and Fairbanks Memorial Hospital, and that Bartlett Regional Hospital was only accepting people from the Southeast region, so API was the only viable evaluation facility for Tavis. The State also argued that the overall delay was due to staffing requirements and API's need to prioritize admitting patients from the community and correctional facilities.

On April 21, Tavis was transported to API. On April 24, the superior court issued a decision that denied Tavis's motion to vacate the State's second evaluation petition. The court reasoned that the delay in Tavis's transport was not only due to API's capacity issues, but also due to the refusal of other facilities to accept him. The court also rejected Tavis's argument that he was detained for 24 days continuously from March 27 to April 20 because "there was no order in place authorizing [his] detention following the release ordered on April 10." The court further agreed with the State that the second petition included new information that was not included in the first, such that the two petitions were not one and the same. The court ultimately concluded that the delay in transportation from April 13 to April 21 did not constitute a due process violation.

After evaluating Tavis, API filed a petition for a 30-day commitment. Following a hearing, the superior court granted the petition. Tavis appeals.

## III. STANDARD OF REVIEW

"We apply our independent judgment to the interpretation of the Alaska Constitution and the mental health commitment statutes and will adopt the rule of law that is most persuasive in light of reason, precedent, and policy."[12]

"Factual findings in involuntary commitment proceedings are reviewed for clear error, and we overturn these findings only where a review of the record leaves us 'with a definite and firm conviction that a mistake has been made.' "[13] "Whether factual findings meet statutory standards for involuntary commitment is a question of law to which we apply our independent judgment."[14]

## IV. DISCUSSION

Tavis appeals the superior court's orders authorizing his second period of hospitalization for evaluation, as well as its 30-day commitment order. The State concedes that it did not provide sufficient evidence at the 30-day commitment hearing to establish that commitment was the least restrictive alternative capable of meeting Tavis's treatment needs.[15] Having independently reviewed the record, we accept the State's concession, and therefore vacate the court's 30-day commitment order and turn to the court's orders related to Tavis's hospitalization for evaluation.

---

[12] *In re Abigail B.*, 528 P.3d at 446 (quoting *In re Mabel B.*, 485 P.3d at 1024) (internal quotation marks omitted).

[13] *In re Hospitalization of Stephen O.*, 314 P.3d 1185, 1191 (Alaska 2013) (quoting *Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 375 (Alaska 2007), *overruled on other grounds by In re Hospitalization of Naomi B.*, 435 P.3d 918 (Alaska 2019)).

[14] *In re Hospitalization of Sergio F.*, 529 P.3d 74, 78 (Alaska 2023).

[15] *See In re Hospitalization of Joan K.*, 273 P.3d 594, 601 (Alaska 2012) ("An important principle of civil commitment in Alaska is to treat persons 'in the least restrictive alternative environment consistent with their treatment needs.' " (quoting AS 47.30.655(2))); *see also In re Sergio F.*, 529 P.3d at 78-79 ("It is the State's burden to prove, by clear and convincing evidence, that there are no less restrictive alternatives to commitment.").

Tavis also argues that his substantive due process rights were violated when he was held at the hospital on the superior court's second order for transportation to a designated facility for evaluation. He argues that given his detention on the superior court's first order authorizing hospitalization for evaluation, his second detention following just thereafter, and the fact that he remained in the hospital between the two periods, he was essentially held for 25 days before being transported for evaluation. He contends that this delay was clearly unreasonable, and requests that we vacate the court's second hospitalization order.[16] The State responds that Tavis's period of detention was reasonable because his mental health condition required that he be hospitalized and cared for, and because the cause of the delay was beyond the State's control. The State also argues that Tavis's detention only lasted nine days, following the second petition based on new information, and that that period of time was reasonably related to the purpose for his detention.

We observe that these arguments emphasize difficult questions that naturally flow from our prior holdings in this area, concerning the contours of a respondent's substantive due process rights in this context. The present controversy also highlights questions about what follows when there has been such delay that substantive due process rights are implicated and the State's commitment petition is dismissed. The difficulty in answering these questions stems, at least in part, from the fact that the legal framework surrounding involuntary civil commitment does not anticipate the failure of the system to respond to the court's hospitalization orders.

---

[16] *See In re Mabel B.*, 485 P.3d at 1026 (vacating order that allowed continued pre-transport hold 16 days after initial order); *see also In re Abigail B.*, 528 P.3d at 452 (vacating orders allowing continued pre-evaluation detention for 13 and 17 days). Tavis also requests that we vacate the subsequent 30-day commitment order on this basis. However, we need not address this issue as we vacate the commitment order on other grounds.

Looking to the United States Supreme Court's decision in *Jackson v. Indiana*, we held in *Mabel B.* that the United States and Alaska Constitutions require "that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."[17] Substantive due process is implicated where that reasonable relationship is lacking.[18] Consistent with our recent precedent, in order to analyze Tavis's substantive due process argument, we examine the question of whether the nature and duration of his detention was reasonably related to the purpose for which he was being held.[19]

### A. The Limited Purpose Of Pre-Evaluation Detention Is To Facilitate Immediate Delivery To An Evaluation Facility.

First, we address the purpose of pre-evaluation detention. We reiterate that the purpose of Tavis's detention under the court's order authorizing hospitalization for evaluation was immediate transportation to an evaluation facility. In *Abigail B.*, we affirmed our conclusion in *Mabel B.* that "the sole purpose of pre-evaluation detention is limited to 'immediate delivery' to an evaluation facility," and that other broader purposes related more generally to the commitment scheme do not support extended or intensive detention at the pre-evaluation stage.[20] The State does not ask us to overturn *Mabel B.* and *Abigail B.* on this point, but advocates that we construe the purpose associated with pre-evaluation detention more broadly. We decline to do so.

While we agree with the State that the statutory scheme as a whole serves broader purposes, such as protecting the patient and the public, we disagree that these broader purposes predominate at the pre-evaluation detention stage. The purpose of an

---

[17] *In re Mabel B.*, 485 P.3d at 1024-25 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)) (internal quotation marks omitted).

[18] *Id.*

[19] *See id.* at 1025.

[20] *In re Abigail B.*, 528 P.3d at 449 (quoting *In re Mabel B.*, 485 P.3d at 1026).

order authorizing hospitalization for evaluation is to ensure the transport of the individual to a facility that the State has authorized to conduct the necessary evaluation, so that the evaluation can proceed without delay. At this early point in the commitment process, the court's decisions involve only an ex parte process and an assessment of probable cause. The order authorizing hospitalization for evaluation is informed by very limited information and has a narrow, but important, objective — that of moving the process forward so that more information can be obtained about what will ultimately serve the broader purposes cited by the State. To broaden our conception of the purpose of the hospitalization order fails to recognize the limited nature of the order, and would seem to invite lengthier periods of pre-evaluation detention, again based on very little process or information.

### B. The Nature Of Tavis's Detention Curtailed His Liberties.

We turn next to the nature of Tavis's detention. As in *Mabel B.* and *Abigail B.*, Tavis was detained in a hospital setting where the hospital staff cared for him.[21] He was initially brought to the hospital because he was found unresponsive due to cardiac failure. After his cardiac symptoms were treated, he was detained involuntarily due to his mental health conditions. While waiting to be transported, Tavis continued to meet the probable cause standard for requiring evaluation at a State-designated facility. However, the hospital could not perform the full evaluation required to proceed with involuntary commitment, nor could it provide the treatment that would be informed by a full evaluation.

Additionally, while detention in a hospital setting was likely less restrictive than a jail setting, Tavis was nonetheless detained involuntarily and could not freely leave. It is apparent from the record that Tavis wanted to leave the hospital, and believed (perhaps correctly during the period between the court's two

---

[21] *See In re Abigail B.*, 528 P.3d at 433-44, *In re Mabel B.*, 485 P.3d at 1020-23.

hospitalization orders) that he should be able to leave the hospital. Tavis's liberties were severely curtailed while he remained at the hospital.

### C. The Duration Of Tavis's Detention Was Not Reasonably Related To The Purpose Of Immediate Delivery To An Evaluation Facility.

Finally, we analyze the duration of Tavis's pre-evaluation detention. Tavis argues that he was continuously detained at the hospital from March 27, when the hospital filed its first petition for evaluation, until April 21, when he was transported to API. The State argues that the detention at issue amounted to nine days, from April 12 to April 21, under the court's second order. In other words, the State argues that the first period, and the additional two days between hospitalization orders, do not count towards the period of detention. It emphasizes that, at least in a technical sense, there was a break between the two periods during which Tavis was being held pursuant to a court order.

Given the lack of clarity in the record about what happened between April 10 and April 12, and the fact that some additional information supported the hospital's second petition for evaluation, we do not necessarily agree with Tavis that his detention for purposes of the court's second hospitalization order began on March 27. Nevertheless, Tavis's 15-day detention, almost immediately preceding his subsequent nine-day period of detention, does not drop out of our consideration altogether. When analyzing the nature and duration of his detention, it is still appropriate for us to consider the first detention as one factor in assessing the restrictions imposed upon Tavis.[22] That is, when Tavis's second period of detention began, he had just been held involuntarily for two weeks at a hospital waiting to be transported to an evaluation facility, which the superior court found to be a violation of his substantive due process rights. Very shortly thereafter, he was detained again on

---

[22] The State conceded at oral argument that it would be appropriate for us to so consider the first period of detention in our analysis.

the basis of some additional information, and continued to be held for another nine days at the same hospital. Even assuming, without deciding, that we consider the duration of Tavis's detention on the court's second hospitalization order to be nine days, we conclude that that detention, paired with the extended detention just prior, amounted to a violation of Tavis's substantive due process rights.

Included in our analysis is our consideration of the State's proffered reasons for the delay in transporting and evaluating Tavis. The State contends that this delay was due not just to capacity issues, but to something it contends was unpredictable and beyond its control — the refusal of designated evaluation facilities to accept Tavis. The State maintains that such delay, related to the decisions of the individual evaluation facilities it has designated, should not be held against it.

In *Mabel B.*, we cited the Ninth Circuit's decision in *Oregon Advocacy Center v. Mink*, and concluded that lack of capacity at an evaluation facility alone is an insufficient justification for delay.[23] Given the liberty interests at stake in the involuntary commitment context, the *Mink* court explained that the State cannot rely on factors such as "[l]ack of funds, staff, or facilities" to "justify the State's failure to provide [individuals] with [the] treatment necessary" for their care.[24] We adopted this reasoning in *Mabel B.*,[25] and again in *Abigail B.*[26]

Here, the superior court determined that the delay between its evaluation order and Tavis's transport to API was due not only to limited capacity at API, but also

---

[23]     *See In re Mabel B.*, 485 P.3d at 1025-26 (citing *Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003)). We also explained in *In re Hospitalization of Gabriel C.* that it was clear "that the legislature did not intend to authorize these evaluations to be delayed simply because the nearest designated evaluation facility is filled to capacity." 324 P.3d 835, 838 (Alaska 2014).

[24]     *Mink*, 322 F.3d at 1121.

[25]     485 P.3d at 1025-26.

[26]     528 P.3d at 449.

to the fact that remaining available facilities refused to accept Tavis. The superior court understood that lack of capacity at API alone would not justify an extended delay in transportation for evaluation. But the court held that the inability or unwillingness of other facilities to accept Tavis rendered reasonable the relationship between the limited purpose of its transportation order and the nature and extended duration of Tavis's detention.

We disagree. The ability and willingness of those facilities designated by the State to accept respondents and to conduct evaluations are not unlike the capacity issues that the State has previously cited in explaining delays in transportation for evaluation. Indeed, the refusal by a designated facility to accept individuals for evaluation accounted for part of the delay that we considered in *Abigail B.*[27] The willingness of facilities to accept patients, and limitations on the facilities' ability to accept patients, are both components of the State's capacity. And the State is generally aware of or has access to information about these factors. The State's argument that API was the only facility that could accept Tavis because others refused did not justify Tavis's extended detention or render the combined nature and duration of his detention more reasonable.

Where the State's delay in evaluating Tavis stemmed from lack of capacity within its designated facilities, and particularly where Tavis had been detained for two weeks just prior to the nine-day detention period at issue, the nature and duration of Tavis's pre-evaluation detention were not reasonably related to the limited purpose of the court's evaluation order. That second period of detention thus violated Tavis's substantive due process rights.

---

[27] *Id.* at 444.

## V.  CONCLUSION

For the reasons stated above, we VACATE the superior court order issued on April 24, 2023, upholding the commitment order.  We also VACATE the 30-day commitment order.